```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DIVISION

CURTIS JONES, et al.,              )
                                   )
               Plaintiffs,         )
                                   )
     v.                            )    No.  03 C 6398
                                   )
CHICAGO POLICE OFFICERS ROBERT     )
REID (#17285), et al.,             )
                                   )
               Defendants.         )
```

MEMORANDUM ORDER

During the most recent (July 12, 2007) status hearing, this Court further addressed defendants' joint motion to dismiss the Second Amended Complaint ("SAC") as to coplaintiff Clausen Drake-Thompson ("Drake-Thompson") under 28 U.S.C. §1915(e)(2)("Section 1915(e)(2)") on the ground of misrepresentation in the In Forma Pauperis Application ("Application") that she had filed in this action. At that time both Drake-Thompson and her husband objected strenuously that they had in fact paid the then-existing $150 filing fee.

Because this Court had no independent recollection of the circumstances involved, it immediately requested its minute clerk to print out the dockets in this action and in the other essentially contemporaneous action that Drake-Thompson had brought (03 C 6450). Then, based on the docket entries in this action, this Court also obtained from its court reporter a transcript of the November 21, 2005 status hearing during which it had acted on the basis of Drake-Thompson's then-filed

Application.

It turns out that the $150 filing fee in this action was indeed paid when the case was filed on September 10, 2003.[1] Although the representation of Drake-Thompson's poverty that was implicit in the November 2005 Application was certainly misleading for the reasons elaborated on by this Court during the July 12 hearing, Section 1915(e)(2) clearly adverts only to an untrue allegation of poverty in the context of an initial effort to obtain in forma pauperis status to excuse payment of the filing fee, in which event the statute <u>mandates</u> dismissal of the action (compare such cases as <u>Harris v. Cuyler</u>, 664 F.2d 388 (3d Cir. 1981) and <u>Attwood v. Singletary</u>, 105 F.3d 610 (11th Cir. 1997)). Because that was not the situation here, defendants' motion to dismiss is denied.

But that does not at all mean that Drake-Thompson should go scot-free for her misfeasance. As she has confirmed during her own deposition, the property at 938 West Concord, Chicago, where she lived between 1983 and 1999 and of which she is still the sole owner (May 24, 2007 Dep. 17-18), is extremely valuable--here

---

[1] On the following day a like $150 filing fee was paid in Case No. 03 C 6450, but this Court's chambers file contains a copy of a September 30, 2003 letter from the Clerk's Office to Drake-Thompson stating that payment had been stopped on that check, which had then been returned to the Clerk's Office by Drake-Thompson's bank. Although the docket in that case does not show that the $150 check was made good thereafter, that is irrelevant to the issue now before this Court.

is what she stated under oath at Dep. 102):

> Well, I have had friends of ours, associates of my husband's, to try to get me to sell to them, and I am not interested in selling. I've had offers as high as $700, $800, a million.

As the November 21, 2005 transcript before this Court reveals, Drake-Thompson was highly combative--as she seems generally wont to be--about her desire to have counsel appointed for her because her original attorney Standish Willis had withdrawn from representing her.[2] That is why she completed and tendered the Application, and it was in reliance on her misleading submission (its absence of full disclosure) that this Court obtained able counsel from this District Court's trial bar to represent her.

That means, as the luck of the draw would have it, that she has had the benefit of services rendered by lawyers from one of the city's premier law firms, Jenner & Block. That simply would not have happened if this Court had not been induced to rely on what Drake-Thompson said (and more importantly in this instance, what she did not say) in the Application.

One of the famous aphorisms by the late great Nobel laureate in economics, Milton Friedman, was "There is no such thing as a free lunch." What Drake-Thompson never revealed to this Court

---

[2] During the July 12, 2007 hearing Drake-Thompson said, "I never requested counsel." But the court file includes her signed "Motion for Appointment of Counsel" (presented on the form made available to pro se litigants by this District Court's Clerk's Office), which was in turn supported by her contemporaneously signed and presented Application.

3

was her ownership of an asset that could be utilized to enable her to pay the market rate for counsel representing her many times over.  Under the circumstances, this Court orders that Drake-Thompson is liable for the reasonable cost of the legal services heretofore and hereafter rendered as the result of her counsel's appointment (cf. this District Court's LR 83.41(a)).  Both the quantification and the means for satisfaction of that obligation remain for future resolution.  In the meantime, the previously-set August 6, 2007 status date will remain in effect.

_____
Milton I. Shadur
Senior United States District Judge

Date:   July 16, 2007